IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) SOUTHAMPTON, LTD. and (2) SOUTHWEST REINSURANCE, INC., <br><br> Plaintiffs, <br><br> v. <br><br> (1) VAHID SALALATI, (2) GREGORY LUSTER, and (3) ROGER ELY, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) CASE NO. CIV-14-852-M <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## PLAINTIFFS' ORIGINAL COMPLAINT

Plaintiffs Southampton, Ltd. and Southwest Reinsurance, Inc. file this Original Complaint against Defendants Vahid Salalati, Gregory Luster, and Roger Ely follows:

### I.

### NATURE OF THE ACTION

1.     This lawsuit arises from a guarantor's failure to repay amounts due under a promissory note memorializing an advance loan from Southampton, Ltd. in connection with the purchase of automobile dealerships in Oklahoma. In connection with this loan arrangement, the guarantor also agreed to sell vehicle service contracts and other ancillary products offered by Southwest Reinsurance, Inc. at its dealerships, but failed to sell the required number of products. Instead, the dealerships sold and continue to sell similar contracts offered by Southwest Reinsurance, Inc.'s competitors. Defendants are all partners and promoters of the guarantor, which they purportedly formed and then used as a vehicle to raise capital to acquire the dealerships.

---

PLAINTIFFS' ORIGINAL COMPLAINT                                                                                                    PAGE 1

2. Moreover, instead of repaying the amounts owed to Plaintiffs, the guarantor made a substantial payment to one of its former directors at a time when the guarantor was insolvent or when such payment would cause the guarantor to become insolvent in violation of Oklahoma corporate law. Defendants are the guarantor's directors and approved of this unlawful payment.

## II.

## PARTIES

3. Plaintiff Southampton, Ltd. ("Southampton") is an alien business corporation organized and existing under the laws of the Turks and Caicos Islands with its principal place of business in the Turks and Caicos Islands.

4. Plaintiff Southwest Reinsurance, Inc. ("Southwest Reinsurance") is a New Mexico corporation having it principal place of business in Albuquerque, New Mexico.

5. Defendant Vahid Salalati is a natural person and is a citizen of Oklahoma. Salalati may be served with process at 415 Foxborough Court, Norman, Oklahoma 73072.

6. Defendant Roger Ely is a natural person and is a citizen of Oklahoma. Ely may be served with process at 4104 Copper Rock Drive, Edmond, Oklahoma 73025-2913.

7. Defendant Gregory Luster is a natural person and is a citizen of Oklahoma. Luster may be served with process at 1400 Winding Ridge Road, Edmond, Oklahoma 73034-1400.

### III.

### JURISDICTION AND VENUE

8. Plaintiffs incorporate the foregoing allegations herein by reference.

9. This Court has jurisdiction under 28 U.S.C. § 1332(a) because (1) no defendant is a citizen of any state of which any plaintiff is also a citizen; and (2) the amount in controversy, without interest and costs, exceeds $75,000.

10. Venue is proper in the Western District of Oklahoma pursuant to 28 U.S.C. § 1391 because (1) all defendants are residents of the State of Oklahoma and at least one of the defendants resides in the Western District of Oklahoma; and (2) a substantial part of the events and omissions giving rise to the claims asserted herein occurred within the Western District of Oklahoma.

### IV.

### FURTHER FACTUAL BACKGROUND

11. Plaintiffs incorporate the foregoing allegations herein by reference.

12. Plaintiffs are in the business of administering and offering vehicle service contracts, extended warranty agreements, and other financial and insurance products sold in connection with new and used automobile purchases.

13. Defendants Salalati, Luster, Ely are the co-owners and managers of a for-profit business called Four Horsemen Auto Group, Inc. ("Four Horsemen").

14. Salalati, Luster, and Ely came together to form Four Horsemen in January 2012 for purposes of promoting a venture to purchase and operate two automobile dealerships in Duncan, Oklahoma, along with non-party Michael J. Terry. They intended

to raise capital from private investors, which capital would be combined with funds contributed by Four Horsemen and used to acquire the dealerships.

15. Salalati, Luster, and Ely elected themselves as directors and officers of Four Horsemen, but they were not shareholders of Four Horsemen.

16. Though Defendants submitted a certificate of incorporation for Four Horsemen with the Oklahoma Secretary of State, they did not issue any shares of stock in Four Horsemen, capitalize Four Horsemen, make arrangements to repay Four Horsemen's obligations, hold regular board of director or shareholder meetings, or otherwise fully form and operate Four Horsemen as a separate entity.

17. In connection with promoting their venture, Salalati, Luster, and Ely, individually and via Four Horsemen, raised capital from private investors to purchase the dealerships, formed limited liability companies to hold the dealerships' assets and operate the dealerships after the purchase, and entered into numerous contracts with lenders, vendors, and others so that the dealerships could ultimately operate once acquired.

18. In particular, Four Horsemen entered into a series of agreements with Plaintiffs under which Four Horsemen and the dealerships Defendants were in the process of purchasing would act as Plaintiffs' agent for purposes of selling Plaintiffs' vehicle service contracts and other financial products at the dealerships. Under the arrangement, the dealerships (and, by extension, Four Horsemen) were entitled to keep a percentage of the sale price from such contracts as profit.

19. Terry (who Defendants planned to appoint as Dealer Principal of the dealerships) obtained an advance loan of $500,000 from Southampton on the dealerships'

anticipated commissions to benefit Four Horsemen. Terry entered into a Promissory Note with Southampton memorializing Terry's agreement to repay the loan. A true and correct copy of the Promissory Note is attached as Exhibit 1.

20. Four Horsemen entered into a Guaranty with Southampton in which it agreed to absolutely and unconditionally guarantee Terry's payment obligations under the Promissory Note, which was a condition to Southampton extending the $500,000 loan. A true and correct copy of the Guaranty is attached as Exhibit 2.

21. Four Horsemen also entered into a Vehicle Service Contract GAP Waiver Contract Volume Loan Advance Agreement (the "Advance Agreement") with Southwest Reinsurance. Under the Advance Agreement, Four Horsemen agreed that its dealerships would exclusively sell vehicle service contracts (VSCs) and guaranteed auto protection (GAP) contracts offered by Southwest Reinsurance at its automobile dealerships and agreed to sell a minimum number of such contracts ever calendar quarter. The Advance Agreement further provides that Southwest Reinsurance will act as collection agent for Southampton in connection with the Promissory Note and the Guaranty in exchange for an administration fee. A true and correct copy of the Advance Agreement is attached as Exhibit 3.

22. Four Horsemen's dealerships also executed a Producer Agency Agreement with Southwest Reinsurance. The Producer Agency Agreement provides that the dealerships will pay the premiums on the vehicle service contracts and GAP contracts sold at their automobile dealerships to Southwest Reinsurance within ten (10) days

following the end of the month in which each contract is sold. A true and correct copy of the Producer Agency Agreement is attached as Exhibit 4.

23. The Guaranty, the Advance Agreement, and the Producer Agency Agreement are all governed by the laws of the State of Texas.

24. Soon after the execution of the Promissory Note, Guaranty, the Advance Agreement, and the Producer Agency Agreement, Four Horsemen raised sufficient capital and acquired the automobile dealerships as planned.

25. After operating the dealerships for several months, however, a dispute arose between Salalati, Luster, Ely, and Terry concerning the dealerships' management. This dispute resulted in a lawsuit between Salalati, Luster, Ely, and Terry (and others parties not relevant to this suit), which they eventually resolved.

26. In or about September 2013, Salalati, Luster, and Ely executed a Settlement Agreement and Release in which they agreed to contribute a substantial sum to Four Horsemen and then cause Four Horsemen to transfer that sum to Terry in exchange for Terry's interest in Four Horsemen and the limited liability companies that Defendants formed to own and operate the dealerships. At the time Four Horsemen transferred that sum to Terry, Four Horsemen's capital was inadequate or impaired or was such that the payment to Terry would cause Four Horsemen's capital to become impaired.

27. Salalati, Luster, and Ely further agreed that Four Horsemen – which they then exclusively controlled – would attempt to negotiate a resolution of any contractual dispute with Southampton.

28. Terry failed to timely pay amounts due under the Promissory Note and is in default. To date, after all just and lawful offsets and credits have been made, a principal balance of $394,634.70 remains unpaid under the Promissory Note, plus interest, costs, and attorneys' fees, which continue to accrue daily.

29. Southampton informed Four Horsemen of Terry's default under the Promissory Note and demanded payment pursuant to the Guaranty, but Four Horsemen refused and failed to pay amounts due under the Promissory Note as required by the Guaranty.

30. As a result of Four Horsemen's failure to pay amounts due under the Promissory Note and the Guaranty, Southampton sustained and continues to sustain substantial damages.

31. Four Horsemen has also failed and refused to sell the agreed upon minimum number of VSCs and GAP contracts required by the Advance Agreement. Additionally, Four Horsemen offered vehicle service contracts, guaranteed auto protection contracts, and similar products at its automobile dealerships, despite its agreement to sell exclusively such products offered by Southwest Reinsurance.

32. As a result of Four Horsemen's breach of its obligations under the Advance Agreement, Southwest Reinsurance sustained and continues to sustain substantial damages.

33. Four Horsemen's dealerships have also sold numerous VSCs and GAP contracts with corresponding premiums owed to Southwest Reinsurance, but have not remitted such premiums to Southwest Reinsurance in violation of the Producer Agency

Agreement. The dealerships instead retained those premiums as profits, which profits ultimately inured to Four Horsemen's benefit.

34. As a result of Four Horsemen's breach of the Producer Agreement, Southwest Reinsurance has sustained and continues to sustain substantial damages.

## V.

## CAUSES OF ACTION

A. **Count One – Breach of Guaranty**

35. Plaintiffs incorporate the foregoing allegations herein by reference.

36. The Guaranty is a valid and enforceable contract.

37. Southampton has performed all conditions precedent under the Promissory Note and the Guaranty.

38. Four Horsemen breached the Guaranty by refusing and failing to pay amounts due under the Promissory Note following Terry's default.

39. As a direct and proximate result of Four Horsemen's breaches of the Guaranty, Southampton suffered and continues to suffer injury and damage.

40. Southampton seeks to recover its actual damages, including, but not limited to, the Promissory Note's unpaid principal balance of $394,634.70, consequential damages, interest, and attorneys' fees and expenses incurred because of Four Horsemen's contract breaches.

41. As partners of and promoters of Four Horsemen, Salalati, Luster, and Ely are jointly and severally liable for injury and damage caused by Four Horsemen's breaches of the Guaranty.

B. **Count Two – Breach of the Advance Agreement**

42. The Advance Agreement is a valid and enforceable contract.

43. Southwest Reinsurance has performed all conditions precedent under the Advance Agreement.

44. Four Horsemen breached the Advance Agreement by failing and refusing to cause the automobile dealerships its operates to sell the agreed upon minimum number of VSCs and GAP contracts and by offering or selling vehicle service contracts, guaranteed auto protection contracts, and similar products produced by company(ies) other than Southwest Reinsurance.

45. As a direct and proximate result of Four Horsemen's breaches of the Advance Agreement, Southwest Reinsurance suffered and continues to suffer injury and damages.

46. Southwest Reinsurance seeks to recover its actual damages, including, but not limited to lost commissions, consequential damages, and attorneys' fees and expenses incurred because of Four Horsemen's contract breaches.

47. As partners of and promoters of Four Horsemen, Salalati, Luster, and Ely are jointly and severally liable for injury and damage caused by Four Horsemen's breaches of the Advance Agreement.

C. **Count Three – Breach of the Producer Agency Agreement**

48. Plaintiffs incorporate the foregoing allegations herein by reference.

49. The Producer Agency Agreement is a valid and enforceable contract.

50. Southwest Reinsurance has performed all conditions precedent under the Producer Agency Agreement.

51. Four Horsemen breached the Producer Agency Agreement by failing and refusing to cause its dealerships to remit premiums due under the Producer Agency Agreement to Southwest Reinsurance within ten (10) days following the end of the month in which each contract was sold.

52. As a direct and proximate result of Four Horsemen's breach of the Producer Agency Agreement, Southwest Reinsurance suffered and continues to suffer injury and damages.

53. Southwest Reinsurance seeks to recover its actual damages, including, but not limited to, the $103,395 in premiums Four Horsemen's dealerships have failed to remit to Southwest Reinsurance, consequential damages, and attorneys' fees and expenses incurred because of such contract breaches.

54. As partners of and promoters of Four Horsemen, Salalati, Luster, and Ely are jointly and severally liable for injury and damage caused by Four Horsemen's breaches of the Producer Agency Agreement.

D.  **Count Four – Unlawful Stock Purchase or Redemption / Unlawful Dividend**

55. Plaintiffs incorporate the foregoing allegations herein by reference.

56. Plaintiffs are creditors of Four Horsemen.

57. Salalati, Luster, and Ely have served as directors of Four Horsemen at all relevant times.

58. In or about September 2013, Salalati, Luster, and Ely caused Four Horsemen to purchase or redeem its own shares of capital stock formerly held by Terry (assuming any such stock was issued) for cash or other property at a time when the purchase or redemption would cause impairment of the capital of Four Horsemen, or paid a dividend to Michael Terry at a time when Four Horsemen lacked adequate capital, in violation of Sections 41 or 52 of the Oklahoma General Corporations Act.

59. Four Horsemen was under the administration of directors Salalati, Luster, and Ely at the time when Four Horsemen violated Sections 41 or 52 of the Oklahoma General Corporations Act, and Salalati, Luster, and Ely willfully or negligently caused such violations.

60. Accordingly, Salalati, Luster, and Ely are jointly and severally liable to Plaintiffs for the full amount unlawfully paid for the purchase or redemption of stock or as an unlawful dividend.

E. Count Five – Attorneys' Fees

61. Plaintiffs incorporate the foregoing allegations herein by reference.

62. As a result of Four Horsemen's breaches of its contracts with Plaintiffs, Plaintiffs were required to retain the legal services of the law firm Haynes and Boone, LLP of Dallas, Texas and Hornbeek, Vitali & Braun, P.L.L.C. of Oklahoma City, Oklahoma. Plaintiffs have agreed to pay Haynes and Boone, LLP and Hornbeek, Vitali & Braun, P.L.L.C. a reasonable fee for its services necessarily rendered and to be rendered in this action. Although Plaintiffs presented their claim for damages to Four Horsemen, it did not tender payment. Accordingly, Plaintiffs are entitled to an award of their

reasonable and necessary attorneys' fees and expenses incurred pursuing their claims in an amount to be established at trial. TEX. CIV. PRAC. & REM. CODE ANN. § 38.001; OKLA. STAT., tit. 12, § 936.

63.  Plaintiffs are also entitled to recover their reasonable and necessary attorneys' fees under the Guaranty, the Advance Agreement, and the Producer Agency Agreement.

## VI.

## PRAYER

WHEREFORE, Plaintiffs Southampton, Ltd. and Southwest Reinsurance, Inc. respectfully request that upon final trial of this case, they have:

1. The current unpaid balance due under the Promissory Note in the principal amount of $394,634.70;

2. The current unpaid premiums Four Horsemen's dealerships have failed to remit to Southwest Reinsurance in the amount of $103,395;

3. The actual and consequential damages arising from Four Horsemen's breaches of the Guaranty, the Producer Agency Agreement, and the Advance Agreement;

4. All interest, fees, costs, and expenses due under the Guaranty, the Producer Agency Agreement, and the Advance Agreement as they continue to accrue;

5. The full amount Four Horsemen unlawfully paid for the purchase or redemption of Four Horsemen's stock, or the full amount of the dividend Four Horsemen unlawfully paid, in violation of Sections 41 or 52 of the Oklahoma General Corporations Act;

6. Their reasonable and necessary attorneys' fees and expenses;

7. Exemplary damages;

8. Costs of court;

9. Pre- and post-judgment interest at the highest rate allowed by law;

10. All such other and further relief to which Plaintiffs may be justly entitled.

Dated: August 12, 2014

Respectfully submitted,

/s/ *Larry G. Cassil, Jr.*
Larry G. Cassil, Jr., OBA #14694
Hornbeek, Vitali & Braun, P.L.L.C.
3711 N. Classen Boulevard
Oklahoma City, Oklahoma 73118
Telephone: (405) 236-8600
Facsimile: (405) 236-8602

-and-

Lisa S. Barkley
State Bar No. 12851
HAYNES AND BOONE, LLP
112 East Pecan Street, Suite 1200
San Antonio, Texas 78205
Telephone: (210) 978-7000
Facsimile: (210) 978-7450
lisa.barkley@haynesboone.com

Werner A. Powers
Texas Bar No. 16218800
*(to be admitted pro hac vice)*
Natalie DuBose
Texas Bar No. 24077481
*(to be admitted pro hac vice)*
HAYNES AND BOONE, LLP
2323 Victory Avenue, Suite 700
Dallas, Texas 75219
Telephone: (214) 651-5000
Facsimile: (214) 541-5940
werner.powers@haynesboone.com
natalie.dubose@haynesboone.com

ATTORNEYS FOR PLAINTIFFS